**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

ARNAUD KABORE, et al.,

        Plaintiffs

        v.

ANCHOR STAFFING, INC., et al.

        Defendants

:
:
:               Civil Case No. L-10-3204
:
:
:
:

o0o

## MEMORANDUM

This collective action suit arises under the Fair Labor Standards Act ("FLSA") and various Maryland laws. After both informal and formal discovery and a six-hour mediation before United States Magistrate Judge Beth P. Gesner, the parties settled Plaintiffs' claims for a total of $52,600.00 (approximately $750 per Plaintiff). Now pending is Plaintiffs' Petition for Award of Attorneys' Fees and Costs. Docket No. 62. The parties diverge sharply in their assessment whether the fees and costs sought by Plaintiffs are reasonable. Plaintiffs seek $87,495.00 in fees and $3,074.28 in costs, for a total of $90,569.28. Arguing that these figures are based on excessive hours of billed time, excessive hourly rates, and improper cost calculations, Defendants contend that Plaintiffs are entitled to no more than $35,609.50 in fees and $1,204.70 in costs, for a total of $36,814.20. The issues have been fully briefed; no hearing is necessary. See Local Rule 105.6 (D. Md. 2010).

Calculating attorneys' fees is indeed a difficult task for a court, requiring the judge to second guess, based on imperfect information, the time expended by the attorneys. In this case, the task was exceptionally difficult due to a detailed 37-page fee spreadsheet and many pages of briefing. In reaching the conclusions stated herein, the Court in no way criticizes or finds fault

with the fine attorneys on both sides who handled this case.  The Court must, however, make tough judgments in the context of a case in which the requested attorneys' fees significantly exceed the total recovery.  The Court appreciates that collective actions are permitted in part to vindicate the rights of individuals who may not have the resources or ability to file suit on their own.  Nevertheless, the fees and costs expended in relation to the total recovery is a metric the Court must consider.  For the reasons set forth below, the Court directs Plaintiffs to submit a revised fee request consistent with the findings in this Opinion.

## I.      Attorneys' Fees

Under the FLSA, successful plaintiffs are entitled to an award of reasonable attorneys' fees and costs.  Lyle v. Food Lion, Inc., 954 F.2d 984, 988 (4th Cir. 1992).  As the Supreme Court explained in Hensley v. Eckerhart, the "most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  461 U.S. 424, 433 (1983).  The trial court has discretion to adjust this figure, the "lodestar" fee, based on certain factors used to assess whether the hours and rates are reasonable.  See Barber v. Kimbrell's, Inc., 577 F.2d 216, 226 & n.28 (4th Cir. 1978) (adopting the twelve factors enumerated in Johnson v. Ga. Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974) and holding that "any award must be accompanied by detailed findings of fact with regard to the factors considered").

The Johnson factors are as follows:

(1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional

relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

Id.  The Rules and Guidelines for Determining Attorneys' Fees in Certain Cases, App. B, Local Rules (D. Md. 2011) ("Guidelines") also provide helpful guidance to judges in this District.

In the instant case, the Court finds <u>Johnson</u> factors one (the time and labor expended) and nine (the experience, reputation, and ability of the attorney) to be most relevant.  Factor one is at issue because the parties disagree about the number of hours Plaintiffs' counsel may reasonably claim as time spent working on the case.  Factor nine is significant because, as in virtually every case in which attorneys' fees are recoverable, the experience, reputation, and ability of counsel are relevant to the reasonableness of hourly rates.  Keeping these factors in mind, the Court will now address the reasonableness of the hours spent by counsel and of counsel's rates.

### A.        Number of Hours Expended

As the fee applicant, Plaintiffs have the burden of demonstrating with sufficient detail that the hours expended on the litigation for which fees are sought are reasonable.  <u>Hyatt v. Barnhart</u>, 315 F.3d 239, 253 (4th Cir. 2002) (citing <u>Hensley</u>, 461 U.S. at 433).  To meet this burden, Plaintiffs generally must produce "an itemized listing of hours and expenses and a short description for each entry explaining how the time was spent."  <u>Thompson v. U.S. Dept. of Housing and Urban Dev.</u>, No. MGJ-96-309, 2002 WL 31777631, at *9 (D. Md. Nov. 21, 2002).  An award of attorneys' fees may not include hours that are excessive, redundant, or unnecessary.  <u>See</u> <u>Hensley</u>, 461 U.S. at 434.

As stated, Plaintiffs' counsel, the Employment Law Group P.C. ("ELG"), has submitted a 37-page spreadsheet containing detailed, contemporaneous records of the hours expended by various individuals on the case.  For each time entry, the spreadsheet lists the litigation phase, the date, the biller, a brief description of the work, the amount of time spent, the hourly rate, and the

total billable amount.  See Mem. in Support of Pls.' Pet. Ex. 5, Docket No. 63-5 ("Fee

Spreadsheet").  Plaintiffs have sufficiently provided the details necessary to justify an award of

attorneys' fees.  As explained below, however, the amount of the award must be adjusted.

Plaintiffs contend that the total amount of hours expended in the prosecution of their

claims is 413.1.  This includes work performed by two partners, Scott Oswald and Nick

Woodfield, an associate, Kellee Kruse, and a legal assistant/paralegal, Jeremy Schneider, who

apparently performed "most" of the work on this case "to keep costs down."  Id. at 13.  Plaintiffs

assert that, in preparing the Fee Petition, ELG adjusted its billing records by cutting hours that

reflected excessive or unnecessary work.  Nevertheless, Defendants take issue with 270 of the

598 time entries on the Fee Spreadsheet.  Defendants have created their own spreadsheet, which

adds a column categorizing their objections by type and reorders the entries accordingly.[1]

Defendants take issue with the following categories of work:

| | |
|---|---|
| i. | Entries 1–28: case evaluation |
| ii. | Entries 29–78: clerical work |
| iii. | Entries 79: duplicative item |
| iv. | Entry 80: duplicative work |
| v. | Entries 81–86: excessive travel time |
| vi. | Entries 87–91: work related to fee petition |
| vii. | Entries 92 –217: internal meetings |
| viii. | Entry 218–219: unclear entry |
| ix. | Entries 220–252: unnecessary work |
| x. | Entries 253–266: work related to retaliation claim that was not pursued |
| xi. | Entries 267–270: work related to ELG's website |

Defs.' Markup of Pls.' Fee Spreadsheet ("Markup"), Defs.' Am. Joint Resp. to Pls.' Fee Pet. Ex.

1, Docket No. 65-1.

---

[1] For ease of reference, the entry numbers cited in the remainder of this section are all taken from Defendants'
Markup rather than from Plaintiffs' Fee Spreadsheet.  The Markup, however, applies different hourly rates than
those sought by Plaintiff, except with respect to Ms. Kruse.  Where total rates are cited by the Court in this section,
they are based on hourly rates sought by Plaintiffs rather than those proposed by Defendants.

After subtracting the hours accounted for in each of the contested entries, Defendants calculate the appropriate number of hours for Mr. Schneider to be 120.10 and the appropriate number of hours for Mr. Woodfield to be 88, leaving zero billable hours attributable to Mr. Oswald and Ms. Kruse.  In their Reply brief, Plaintiffs neither object to the categorizations in Defendants' Markup nor provide any argument to rebut the bases for Defendants' objections as to each category or time entry.  Each category is considered in turn.

   i.      **Case Evaluation**

Defendants argue that fees for the work recorded in Entries 1–28 should not be included in the total fee award because the work relates to case evaluation activities.  In Entry 11, for instance, Ms. Kruse records 2.5 hours for "Draft[ing] case evaluation presentation; related legal research (MMWOA, MWPCA, FLSA - liquidated damages, motor carrier exception, overtime and minimum wage requirements); emailed to Scott Oswald for review."  Entry 20 bills for 2.8 hours during which Ms. Kruse "Drafted Kabore opinion letter (intro and conclusion; summary of potential client and opt-in interviews and documents; legal analysis)."  In Entry 21, Mr. Oswald bills for 2.5 hours spent reviewing and editing the opinion letter.

It appears that nearly all of the challenged case evaluation entries, some of which refer to a "potential client," record work performed before Plaintiffs' counsel had begun their formal representation.  As a general matter, counsel may not receive fees for work that could not be charged to a private client.  See, e.g., Hensley, 461 U.S. at 434 ("Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority.") (quoting Copeland v. Marshall, 641 F.2d 880, 891 (1980) (en banc)).  Fees for work recorded in Entries 1–28 that was performed before Plaintiffs' counsel was retained are not recoverable.  See Jackson v. Estelle Place, LLC, No. 1:08cv984 (LMB/TRJ), 2009 WL 1321506,

at *4 (E.D. Va. May 8, 2009) ("[T]he fees related to The Employment Law Group's examination of the plaintiffs' claims before the Group was retained will not be included because a private client would not be charged for those expenses.").

Plaintiffs' counsel have neither provided argument to rebut Defendants' challenge to the fees billed in Entries 1–28 nor proffered that the work in these entries was done before Plaintiffs' counsel had been retained.  Based on the work descriptions, the only work that appears to have been done after Plaintiffs' counsel was retained is the work recorded in Entries 23–28, which relates to a "case transition meeting" attended by Mr. Schneider, Ms. Kruse, Mr. Woodfield, and Mr. Oswald.  Fees for this work are recoverable.  Fees will not be awarded, however, for the work recorded in Entries 1–22.  The total fee award should be decreased accordingly.

> ii.    **Clerical Work**

Defendants argue that the work billed in Entries 29–78 is clerical and, therefore, should not be included in the award of attorneys' fees.  Although certain types of work may fall into a gray area between legal and secretarial work, other types are clearly administrative or secretarial. The latter may not be awarded as attorneys' fees.  See, e.g., In re Beenbottom, BK10-40335-TJM, 2010 WL 2719417 (Bankr. D. Neb. July 7, 2010) (concluding that activities such as "[f]ile setup, scanning, setting up appointments" are clerical and, therefore, not billable).  Fees for work performed by paralegals are generally recoverable, but only "to the extent they reflect tasks traditionally performed by an attorney and for which the attorney would customarily charge the client."  Hyatt, 315 at 255.

The vast majority of entries challenged by Defendants relate to mass mailings and other administrative work regarding the potential opt-in Plaintiffs.  This work is clearly clerical. Entries 75 and 76 are actually categorized by Plaintiffs themselves as "administrative."  Entry 75

bills for 0.3 hours of scanning and processing settlement checks.  Entry 76 bills for 1.5 hours

spent creating labels and stuffing envelopes.  In the most clear-cut instance of billing for clerical

work, Entries 38 and 42 record a total of 10 hours spent folding and stuffing envelopes.

     In a few of the challenged entries, it is not clear whether the work was legal or clerical.

In Entry 41, for instance, in which Mr. Woodfield bills for 1.2 hours spent "prepar[ing] for

mailing to 425 opt-ins," it is not immediately apparent what this "preparation" entailed.  In still

other entries, the type of work appears to fall within the gray area between legal and clerical

work, but the time spent on the work nevertheless appears unreasonable.  To cite an example,

Entry 67 bills for 40 minutes of reviewing, downloading, and circulating a paperless order

regarding a dispositive motions deadline.

     Because almost none of the time recorded in Entries 29–78 reflects legal work

recoverable as attorneys' fees and because Plaintiffs have not presented any argument to the

contrary with respect to the unclear entries, the Court concludes that Plaintiffs have failed to

meet their burden of proof.  Accordingly, the total fee award will be discounted by 90% of the

total fees sought in Entries 29–78; in other words, the reduction should be made by reducing the

total sum in Entries 29–78 by 90%.

### iii.    Duplicative Item

     Defendants contend that Entry 79 is a duplicative item.  The entry, made on March 8,

2011, concerns an email drafted by Mr. Schneider "to OC re obtaining personal identifying

information for potential opt-ins whose mailers were returned undelivered."  The same

description is repeated at Entry 334, also dated March 8, 2011.  Entry 79 bills $46.00 for 40

minutes of work.  Entry 334, however, bills $34.50 for 30 minutes of work.  Because the two

entries appear to be duplicative and Plaintiffs have not indicated otherwise, the Court will decrease the total fee award by the greater amount, $46.00.

### iv.    Duplicative Work

Defendants contend that Entry 80 reflects duplicative work.  Entry 80 records time spent by Mr. Schneider, a paralegal, "[a]ttend[ing] and tak[ing] notes during Anchor telephonic depositions of select opt-in plaintiffs" on October 27, 2011.  Mr. Schneider recorded 5 hours of work for a total of $575.00.  In Entry 541, Mr. Woodfield, a partner, bills for "[a]ttend[ing] depositions of Arnaud Kabore, Everett Tittle, Rodney Moore, Antonio Michie, Antwon Beverly, Thomas Matthews, John Burnham, Dana Conner, and Steve Lutz," also on October 27, 2011. Mr. Woodfield billed a total of $2,000.00 for 5 hours of work.

The Court's Guidelines provide that "Only one lawyer for each separately represented party shall be compensated for attending depositions."  Rule 2(b).  Although an explanatory footnote provides that "[d]eparture from this guideline would be appropriate upon a showing of a valid reason for sending two attorneys to the deposition," Plaintiffs have made no such showing here.  That Mr. Schneider is a paralegal rather than an attorney is irrelevant because, as stated, fees for work performed by paralegals are recoverable to the extent that the work could have been performed by a lawyer and billed to the client.  See Hyatt, 315 F.3d at 255.  Accordingly, the total fee award shall be reduced by $575.00, the duplicative amount listed in Entry 80.

### v.    Excessive Travel Time

Defendants argue that Entries 81–86 record excessive travel time and that the total fee award should be reduced accordingly.   Under the Court's Guidelines, "Up to two (2) hours of travel time (each way and each day) to and from a Court appearance, deposition, witness interview, or similar proceeding that cannot be devoted to substantive work may be charged at

the lawyer's hourly rate."  Rule 2(e)(ii).  In other words, in some instances, an attorney is able to perform substantive legal work while traveling, such as when the mode of transportation is a train or airplane that offers internet access.  In other instances, such as when an attorney drives himself to a court appearance or deposition, it is not possible for the attorney to perform legal work during the journey.  In instances of the latter sort, the attorney may bill for "[u]p to two (2) hours of travel time (each way and each day)."  Id.

Mr. Woodfield has recorded round-trip travel time for two Federal Rule of Civil Procedure 30(b)(6) depositions, on October 5, 2011 and October 24, 2011, and for the settlement conference before Magistrate Judge Gesner on November 30, 2011.  None of the challenged entries bill for two hours or more of travel time, and the Court assumes that the mode of transportation made it impossible for Mr. Woodfield to perform substantive legal work.  The total fees sought in Entries 81–86, therefore, need not be reduced.

**vi.   Work Related to Fee Petition**

Defendants argue that Plaintiffs' counsel should not receive fees for work done in connection with the Fee Petition because this work was "made necessary" by ELG's "excessive billing," which also prevented the parties from including attorneys' fees in their settlement agreement.  Defs.' Am. Joint Resp. 4, Docket No. 65.

Although it is true as a general matter that a "request for attorneys' fees should not result in a second major litigation," Hyatt, 315 F.3d at 253 (quoting Hensley, 461 at 433), counsel are entitled to receive reasonable attorneys' fees for work related to a fee petition.  Mr. Schneider and Mr. Woodfield worked on the 21-page Petition in this case for a total of 4.6 and 5.2 hours, respectively.  This is not excessive.  Contra Chapman v. Ourisman Chevrolet Co., AW-08-2545, 2011 WL 2651867, at *15 (D. Md. July 1, 2011) (reducing award because 45 hours spent on

motion for attorneys' fees by two experienced attorneys was excessive).  The fees billed for work on the Petition need not be adjusted.

### vii.    Internal Meetings

Defendants contend that the total amount of time billed for internal meetings as reflected in Entries 92–217 is excessive and should be reduced.  In Defendants' view, the case "could have been handled by one lawyer, with delegation to the paralegal on an as-needed basis, without the internal meetings."  Defs.' Am. Joint Resp. 5, Docket No. 65.  Defendants further argue that Mr. Oswald's time was "entirely unnecessary and his hours were entirely duplicative of Woodfield's time."  Id.

Rule 2(d) of the Court's Guidelines provides that

> Generally, only one lawyer is to be compensated for client, third party and intraoffice conferences, although if only one lawyer is being compensated the time may be charged at the rate of the more senior lawyer. Compensation may be paid for the attendance of more than one lawyer where justified for specific purposes such as periodic conferences of defined duration held for the purpose of work organization, strategy, and delegation of tasks in cases where such conferences are reasonably necessary for the proper management of the litigation.

The total amount of time recorded in Entries 92–217 by Mr. Woodfield, Mr. Oswald, and Mr. Schneider, all of whom billed for their attendance at interoffice meetings between October 12, 2010 and November 30, 2011, is approximately 50 hours.  This is not an unreasonable amount of time for two partners and a paralegal to spend on internal meetings over the course of thirteen and a half months.  As the Guidelines suggests, internal meetings among counsel and key support staff are an integral part of developing and maintaining a litigation strategy. Collaboration of this nature fosters productive, regular communication within a law firm and prevents unnecessary and duplicative work.  Internal meetings are particularly important in class actions such as this one, which involved 72 Plaintiffs and a formal discovery process.

The internal meetings recorded in Entries 92–217 appear to be of the sort contemplated by the Guidelines.  The meetings were typically weekly or bi-weekly and generally lasted for 0.2 or 0.3 hours each.[2]  The Fee Spreadsheet is sufficiently detailed in explaining the subject matter of each meeting.  On January 24, 2011, for instance, Mr. Woodfield, Mr. Oswald, and Mr. Schneider met to discuss "answer to complaint and discovery responses."  See Markup, Entries 125–128.[3]  A meeting was held on May 18, 2011 to discuss "review of wage information supplied by defendant."  See Markup, Entries 160–162.  The subject of a November 28, 2011 meeting was the upcoming mediation before Judge Gesner.  See Markup, Entries 212–214.

Moreover, given that the case "very nearly did not settle," Plaintiffs' counsel should not be penalized for staying on top of the issues and being fully prepared for a variety of outcomes.  See Pls.' Reply 3–4, Docket No. 67 (noting that a memorandum in support of Plaintiffs' motion for summary judgment, though never filed, was provided to Judge Gesner during the mediation, and asserting that Plaintiffs were prepared to go to trial if necessary).  The total fee award need not be reduced on account of time billed for internal meetings.

### viii.   Unclear Entries

Defendants argue that Entry 218, which records a 20-minute teleconference between Mr. Woodfield and Eric Hovan "re allegations set forth in claim against Defendants," is unclear and possibly unrelated to the instant case.  Plaintiffs assert, however, that Mr. Hovan is an insurance adjuster for Ohio Casualty, one of the Defendants' comprehensive general liability insurance carriers, and that the telephone conversation related to the allegations in the Complaint.[4]  Pls.' Reply 1–2, Docket No. 67.  Accordingly, the call was proper and the total fee award need not be

---

[2] Mr. Schneider has recorded more hours than the partners in connection with the meetings, primarily for preparation time.
[3] Entries 127 and 128, both of which record Mr. Oswald's time for the January 24th  meeting, are identical and appear to be duplicative entries.  Plaintiffs' counsel should reduce the total award request accordingly.
[4] This is the only entry that Plaintiffs' counsel specifically address in the Reply.

reduced with respect to Entry 218.  Nor must the award be reduced with respect to Entry 219, which Defendants claim is similarly unclear.  Entry 219 bills for 20 minutes spent by Mr. Woodfield typing an email to Mr. Schneider regarding his conversation with Mr. Hovan.

     **ix.**     **Unnecessary Work**

     Defendants argue that Entries 220–252 reflect unnecessary work.  Defendants argue, for instance, that the work recorded in Entries 225–235, which concerns a motion for collective action notice, was unnecessary because the parties consented during the initial scheduling conference to a collective action.  The motion, however, was prepared in January 2011, whereas the scheduling conference was not convened until March 2011.  The Court, therefore, cannot deem the work related to the motion to have been unnecessary.  Similarly, Defendants challenge Entries 236–238 as unnecessary because the entries concern discovery motions raising issues that were ultimately resolved informally in a teleconference with the Court.  What Defendants neglect to consider is that the filing of one of the motions is what prompted the Court to schedule the call.  <u>See</u> Docket Nos. 44 and 46.  It cannot be said, therefore, that work related to the motions was unnecessary.

     Finally, Defendants challenge as unnecessary work related to a motion for summary judgment that Plaintiffs never filed and that was not due until 51 days after the settlement conference.[5]  Again, Defendants are incorrect.  Counsel are not expected to assume that a case will settle, and should not be penalized for planning ahead.  The motion would have been filed if the case had not settled.  Moreover, the memorandum in support of the motion was provided to Judge Gesner in connection with the settlement conference and may have played a role in the

---

[5] The Court's usual policy is to set a dispositive motions deadline for 30 days after an unsuccessful settlement conference.  In this case, the settlement conference was held on November 30, 2011, meaning that summary judgment motions would have been due between Christmas and New Year's.  To ensure that counsel would not have to work immediately before or during the end-of-year holidays, the Court set a deadline of January 20, 2012.

resolution of the case or the terms of the settlement agreement.  The Court, therefore, cannot conclude that work done in connection with the motion was unnecessary.  In sum, the hours billed in Entries 220–252 need not be reduced.

### x.      Work Related to Retaliation Claim

Entries 253–266 bill for 7.4 hours of work done by Mr. Schneider and Mr. Woodfield in connection with a potential retaliation claim by one of the opt-in Plaintiffs.  As Defendants correctly point out, attorneys' fees are not recoverable for work related to a claim that does not become part of the lawsuit.  See Jackson, 2009 WL 1321506, at *4 (refusing to award fees for research related to a retaliation claim that was not alleged in the Complaint); see generally Grissom v. Mills Corp., 549 F.3d 313, 318–19 (4th Cir. 2008) (defining "prevailing party").  The total award, therefore, will be reduced by the fees sought in Entries 253–266.

### xi.      Work Related to ELG's Website

Entries 267–270 record time for work related to ELG's website.  In Entry 269, for instance, Mr. Woodfield bills for 0.5 hours of "revis[ing] and update[ing] website content to communicate with clients."  Defendants argue that it is unclear how such work "contributed to the resolution of the case."  Defs.' Am. Joint Resp. 6, Docket No. 65.  Defendants are correct in suggesting that, in general, work related to a law firm's website should be accounted for as part of the firm's overhead expenses, not billed to its clients.  This includes website marketing efforts such as posting noteworthy developments in the law and updates about the firm's cases and clients.  If, however, ELG's website was used in this case as a vehicle for providing necessary information to the opt-in Plaintiffs rather than "communicating" with its clients and prospective clients in the more general sense, then fees associated with the website work are recoverable.

When submitting the revised fee request for the Court's approval, Plaintiffs' counsel should reduce the fees in Entries 267–270 as necessary in light of this conclusion.

### B.     Hourly Rates

In determining whether counsel's hourly rates are reasonable, the court must consider whether "the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Blum v. Stenson, 465 U.S. 886, 890 n.11 (1984).  In making this determination, the court should rely primarily on "affidavits from other attorneys attesting to the reasonableness of the hourly rates," but, if necessary, may also apply its own "knowledge of the market." Beyond Sys., Inc. v. World Ave. USA, LLC, No. PJM-08-921, 2011 WL 3419565, at *3 (D. Md. Aug. 1, 2011).  In this District, the Court's market knowledge is encoded in the Guidelines found in Appendix B of the Local Rules, which provide ranges of reasonable hourly rates based on counsel's years of experience as a member of the bar.  "While the Guidelines are not binding, generally this Court presumes a rate is reasonable if it falls within these ranges." Id. at *4.

Plaintiffs ask the Court to calculate the total fee award by applying the following hourly rates:  $400.00 per hour for Mr. Woodfield and Mr. Oswald (partners), $190.00 per hour for Ms. Kruse (associate), and $115.00 per hour for Mr. Schneider (legal assistant/paralegal).  In support of their request, Plaintiffs have attached to the Fee Petition supporting declarations prepared by Michael L. Rowan, Esq., Thomas Gagliardo, Esq., and David E. Schreiber, Esq.  The declarations were originally prepared for and submitted in support of a fee petition filed by Mr. Woodfield and Mr. Oswald in a Montgomery County, Maryland case following a favorable jury verdict.  See Mem. in Support of Pls.' Pet. 9 and Exs. 2–4, Docket Nos. 63 and 63-2–63-4.

Although all three declarants attest that rates higher than those requested in the instant Fee Petition are reasonable in the employment litigation context, the declarants' assessments are based on market rates in Montgomery County and rely on the <u>Laffey</u> Matrix, a guideline metric that applies to hourly rates for attorneys practicing in Washington, D.C.   As Plaintiffs correctly point out, the <u>Laffey</u> Matrix is not relevant to this case.  <u>See</u> <u>Grissom</u>, 549 F.3d at 323 (concluding that Plaintiff had not met its burden of proof in part because it had "provided no evidence that the <u>Laffey</u> Matrix, which pertains to hourly rates of litigation attorneys in Washington, D.C., is a reliable indicator of the hourly rates of litigation attorneys in Reston, Virginia, a suburb of Washington, D.C.").  The relevant community in the instant case is Baltimore, Maryland, where this Court sits.  <u>See</u> <u>id.</u> at 321.

Mr. Woodfield, who has also submitted a declaration in support of the Fee Petition, acknowledges this shortcoming.  Mem. in Support of Pls.' Pet. Ex. 1, Docket No. 63-1.  Mr. Woodfield asserts that he and Mr. Oswald "customarily charge <u>Laffey</u> Rates for [their] time and in every circumstance possible, The Employment Law Group, P.C. charges and receives an hourly rate of $420.00 per hour for [their] time." <u>Id.</u> at ¶ 13.  Mr. Woodfield further asserts that the ELG typically charges $230.00 per hour for associate time and $135.00 per hour for legal assistant time.  <u>Id.</u>  He explains that the rates sought in this case are slightly lower, however, because the case was filed in Baltimore rather than in Washington, D.C., where market rates are higher.  <u>Id.</u>

The applicable range under the Court's Guidelines for attorneys who have been admitted to the bar for 15 years or more is $275–$400.  The Guidelines range for an attorney who has been admitted to the bar for 9–14 years is $225–300.  The range for attorneys admitted for less than 5 years is $150–$190.  The range for paralegals is $95–$115.  <u>See</u> Rule 3.  Defendants point

out that Mr. Oswald was admitted to the bar in 1997, meaning that he had 13 rather than 15 years

of experience when this case was filed in 2010.  Defendants also argue that because Mr.

Woodfield had been admitted for exactly 15 years when the case was filed, his hourly rate should

be closer to the low end of the range.  Defendants make the same argument with respect to Ms.

Kruse, who had only been admitted for 2 years when she worked on the case, and Mr. Schneider,

who was then a law student expected to graduate in the spring of 2012.

It is clear that both Mr. Woodfield and Mr. Oswald are seasoned attorneys with

significant experience litigating employment actions including those arising under the FLSA.  In

Young v. Viable Commc'ns, Inc., Judge Messitte approved the same hourly rates as those

requested in this case, though it is significant that (i) the fees sought in Young were uncontested

and (ii) Judge Messitte sits in Greenbelt rather than Baltimore.  See No. PJM 09-2250, 2011 WL

5825429 (D. Md. Nov. 14, 2011) (granting Petition); see also PJM-09-2250, Pls.' Pet. for Award

of Att'ys Fees 2, Docket No. 156 (listing requested rates).  The Court approves the rates

proposed for Mr. Woodfield, Ms. Kruse, and Mr. Schneider, but will reduce Mr. Oswald's rate to

$300.00 per hour.  It appears that Mr. Oswald had not been barred for 15 years when this case

began.  In any event, his billing rate would either be at the high end of the 9–14 year range or the

low end of the 15+ year range.  A rate of $300 per hour, therefore, is appropriate here.  In

preparing the revised fee request, Plaintiffs' counsel should recalculate the entries attributed to

Mr. Oswald and adjust the total award accordingly.

## II.    Costs

It is well-established that plaintiffs who are entitled to recover attorneys' fees are also

entitled to recover reasonable litigation-related expenses as part of their overall award.  The

Fourth Circuit has explained that such costs may include "those reasonable out-of-pocket

expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services." Spell v. McDaniel, 852 F.2d 762, 771 (4th Cir. 1988) (internal quotations omitted). For instance, prevailing Plaintiffs may recover costs for "necessary travel, depositions and transcripts, computer research, postage, court costs, and photocopying." Andrade v. Aerotek, Inc., 852 F. Supp. 2d 637, 644 (D. Md. 2012) (internal quotations omitted). Under the Court's Guidelines, "reasonable out-of-pocket expenses (including long-distance telephone calls, express and overnight delivery services, computerized on-line research and faxes) are compensable at actual cost." Rule 4(a). To recover costs in this case, Plaintiffs' counsel must have provided sufficiently detailed records. Andrade, 852 F. Supp. 2d at 644.

Plaintiffs seek $3,074.28 in costs and, in support of this request, have attached to the Fee Petition a spreadsheet detailing a breakdown of costs by date, biller, and description. Mem. in Support of Pls.' Pet. Ex. 6, Docket No. 63-6. Defendants argue that the amount sought by Plaintiffs is excessive because it includes costs that are not recoverable, such as costs for online legal research billed in connection with case evaluation activities. Defs.' Am. Joint Resp. 12, Docket No. 65.

The Court agrees that any costs billed for online research related to evaluation of the case prior to ELG's formal representation should not be included in the total fee award. The other costs sought by Plaintiffs, however, which include costs for couriers, postage, transcripts, conference calls,[6] court fees, and travel, are all sufficiently detailed and appropriate. The Court finds that Plaintiffs have provided ample evidence of costs reasonably incurred in prosecuting this action and are entitled to recover $3,074.28 less any costs not recoverable for case evaluation research.

---

[6] Conference call costs are only recoverable to the extent that the calls were long-distance.

**III.    Conclusion**

By **October 29, 2012**, Plaintiffs shall submit to the Court a revised fee request accompanied by an updated fee spreadsheet and a proposed order the Court may use in granting them the appropriate amount of attorneys' fees and costs.  No argument shall be included in this submission; the Court's decisions herein are not open for reconsideration.  Plaintiffs should simply re-calculate, based upon the conclusions stated in this Opinion, the total amount of fees and costs to which they are entitled.

Dated this 17th day of October, 2012

/s/

_____

Benson Everett Legg
United States District Judge